IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL MCNEAL,   *

Plaintiff   *

v.   *   Civil Action No. JKB-18-2236

ALYSSA CHERUVATHOR,   *

Defendant   *

\*\*\*

## MEMORANDUM OPINION

Plaintiff Michael McNeal, a Maryland prisoner, seeks monetary and injunctive relief against case manager Alyssa Cheruvathor for violation of his Eighth and Fourteenth Amendment rights, after Plaintiff was transferred to another prison and Defendant filed a Petition for Peace Order against Plaintiff.[1] In addition to the Complaint, Plaintiff submitted a Motion for Leave to Proceed In Forma Pauperis (ECF No. 2), which will be granted. He also submitted a Motion for Appointment of Counsel (ECF No. 3), which will be denied.

## STATEMENT OF LAW

Under 28 U.S.C. § 1915A(a) and (b)(1), the Court must screen complaints in civil actions filed by prisoners seeking redress from an officer or employee of a governmental entity and "dismiss the complaint or any portion of the complaint" that the court finds "frivolous, malicious, or fails to state a claim upon which relief may be granted." The purpose of screening is to protect against possible abuses of the privilege of proceeding in forma pauperis and

---

[1] Cheruvathor is the sole Defendant identified in the caption of the Complaint. ECF No. 1 at 1. In the supplement attached to the Complaint, Plaintiff also identifies Dayena Corcoran, Director of the Department of Corrections, and Richard Graham, Warden of Western Correctional Institution as Defendants. *Id.* at 5. However, Plaintiff fails to present any claim against Corcoran or Graham, or otherwise mention them in the Complaint. Moreover, the Complaint repeatedly refers to "defendant" in the singular and, indeed, other than the heading of the section naming Corcoran and Graham, never uses the plural "defendants." *See, e.g.*, *id.* at 3, 7 ("The defendant was personally responsible for the violations of my rights."); *id.* at 6 ("The Defendant has receive [sic] over 60 love letters from me."); *id.* at 9 (requesting punitive damages "against defendant"). Given these failures of function and form, the Court treats Cheruvathor as the sole Defendant.

determine whether Defendant should be required to respond to the action. While this court is mindful that the pleadings of self-represented litigants are liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), factual allegations in a complaint must contain "more than labels and conclusions," and the action may be dismissed if the allegations do not provide "enough to raise a right to relief above a speculative level." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007).

The Complaint broadly asserts that Defendant violated Plaintiff's Eighth and Fourteenth Amendment Rights, but fails to specifically connect either Amendment to the Complaint's factual allegations. Conditions that "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment, in violation of the Eighth Amendment. *Rhodes v. Chapman*, 452 U. S. 337, 347 (1981).

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that the deprivation of [a] basic human need was *objectively* sufficiently serious, and that subjectively the officials acted with a *sufficiently* culpable state of mind.

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (citation and internal quotation marks omitted). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003).

Prisoners have a liberty interest protected under the Fourteenth Amendment in avoiding confinement conditions that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)); *Wilkinson v. Austin*, 545 U.S. 209, 210 (2005). Whether confinement conditions are atypical and substantially harsh "in relation to the ordinary incidents of prison life" is a "necessarily . . . . fact specific" comparative exercise. *Beverati v.*

2

*Smith*, 120 F.3d 500, 502-03 (4th Cir. 1997) (quoting *Sandin*, 515 U.S. at 483-84). "[G]eneral population is the baseline for atypicality for inmates who are sentenced to confinement in the general prison population and have been transferred to security detention while serving their sentence." *Incumaa v. Stirling*, 791 F.3d 517, 527 (4th Cir. 2015). Where, as in *Bevarati v. Smith*, 120 F.3d 500 (4th Cir. 1997), conditions in segregated confinement are "similar in most respects to those experienced by inmates in the general population," no liberty interest exists in avoiding that segregation assignment. *Beverati*, 120 F.3d at 503.

## ANALYSIS

The factual allegations contained in Plaintiff's Complaint can be divided into three general categories. The Court addresses each in turn.

**A. Transfer and Segregation**

Plaintiff takes issue with the fact that, in March 2018, he was transferred to another institution and received 90 days of "segregation time." ECF No. 1 at 6. Plaintiff states that Defendant has "receive[d] over 60 love letters from [Plaintiff]." *Id.* According to Plaintiff, his transfer and segregation time occurred "as a result" of Defendant forwarding these "love letters" to her supervisor. *Id.* This allegation fails to allege that Defendant violated Plaintiff's Eighth or Fourteenth Amendment rights for at least two reasons.

First, Plaintiff only alleges that Defendant turned the letters over to her supervisor; he fails to allege that Defendant was personally involved in the transfer decision or segregation placement.[2] Amendment to cure this defect would be futile in light of the second reason that the claim fails: Plaintiff has not identified a liberty interest giving rise to due process protections. Maryland prisoners have no liberty interest in placement at a particular facility. *Paoli v. Lally*,

---

[2] Indeed, the fact that Plaintiff was transferred only *after* the letters were forwarded to someone else suggests third party involvement in the transfer and segregation decision.

3

812 F.2d 1489, 1493 (4th Cir. 1987) (concluding that "neither the Maryland statutes nor the regulations create liberty interests protected by the due process clause of the fourteenth amendment" against transfer to another facility); *see also Meachum v. Fano*, 427 U.S. 215, 224 (1976) (stating that the Due Process Clause does not "in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system."). Further, courts have held that periods of administrative or disciplinary segregation do not, standing alone, amount to an "atypical and significant hardship" compared with ordinary prison life as required to trigger due process protections. *See Sandin v. Connor*, 515 U.S. 472, 485-86 (1995); *Prieto v. Clarke*, 780 F.3d 245, 254 (4th Cir. 2015) ("[A] prisoner does not establish a state-created liberty interest in avoiding disciplinary segregated confinement if such confinement does not present a dramatic departure from the basic conditions of the inmate's indeterminate sentence." (brackets and internal quotation marks omitted)). Here, aside from a generic reference to the "segregation time of 90 days" that he received, there is nothing in Plaintiff's Complaint to suggest that the conditions of his segregation amounted to an atypical and significant hardship. Thus, even if Plaintiff could allege that Defendant personally ordered Plaintiff transferred and placed on segregation, he cannot allege a due process violation, much less an Eighth Amendment violation.

**B. Peace Order**

Plaintiff's second claim concerns the fact that Defendant filed a "friv[o]lous petition for peace order" against him on May 8, 2018, after he had been transferred to another institution. *Id.* at 6. Plaintiff has attached a copy of Defendant's Petition for Peace Order in which Defendant stated, under oath, that Plaintiff "made several unwanted advancements via letters and has made a threat on my life. Inmate McNeal was transferred to WCI but I'm still getting letters from him

via his brother," and that Plaintiff sent Defendant "several letters and a death threat, threat to gang rape me and leave a knife in my head." ECF No. 1-1 at 4. Plaintiff has also enclosed a copy of the temporary peace order granting relief and an order dismissing Defendant's Petition on June 25, 2018 after she failed to appear at a hearing. *Id.* at 2, 6.

Plaintiff's second claim fails to allege a § 1983 claim under the Eighth or Fourteenth Amendments for several reasons. First, Plaintiff fails to demonstrate that Defendant was acting under color of state law when she filed the petition, as necessary to state a claim under 42 U.S.C. § 1983. Although he generically alleges that Defendant was acting under color of state law "at all times mentioned in this complaint," the act of seeking a peace order, particularly one including a prohibition on Plaintiff or his (non-inmate) brother contacting her at her personal residence and other locations, does not appear to be a state action. The subject of her petition for peace order—Defendant's sworn allegations of threats of gang rape and murder or, at minimum, the "over 60 love letters" that Plaintiff admits to sending her—is profoundly personal and unrelated to her position as a case manager.

In any event, even if he could demonstrate that Defendant was acting under color of state law when she sought a peace order, Plaintiff fails to demonstrate that this violated his rights under the Eighth or Fourteenth Amendments. A legal request to a court that one be prohibited from contacting another could be frustrating, but it is not cruel; given the commonplace nature of protective orders, it is not unusual; and, because it is a civil tool, it is not punishment. Thus, there is no Eighth Amendment violation. Further, Defendant need not provide Plaintiff with "process" under the Fourteenth Amendment before filing the petition—the courts provide all of the process that is due when they decide to grant or deny a petition for peace order. In fact, as Plaintiff demonstrates, the order was dismissed after Defendant failed to appear for a hearing

(i.e., the process due to Plaintiff in that situation) about the petition.

**C. Defendant's Clothing**

Finally, Plaintiff states that this case "stem[s] from [Defendant] inappropriate dress code working inside of prison facility," before making wholly irrelevant allegations about Defendant's self-esteem and her response in 2016 to the lewd actions of two inmates unrelated to this case. ECF No. 1 at 6-7. It is unclear how Defendant's clothing unconstitutionally punishes Plaintiff or infringes on his liberty interests. Even assuming for the sake of argument that Defendant's clothing violates her employer's dress code, that is a personnel issue and has no bearing on Plaintiff's constitutional rights. Rather, this statement merely serves to highlight the frivolous and malicious nature of the Complaint.

Had Plaintiff limited his Complaint to merely challenging the constitutionality of his transfer or segregation, his lawsuit would have been meritless but understandable. Instead, Plaintiff's Complaint and the accompanying exhibits suggest that this Complaint is the latest in a series of harassing actions against Defendant. In his own words (i.e., not accounting for Defendant's sworn assertion that Plaintiff threatened to rape and murder Defendant, ECF No. 1-1 at 4), Plaintiff states Defendant received "over 60 love letters" from him, ECF No. 1 at 6, and acknowledges that he was transferred to another institution "because [Defendant] felt disrespected and threatened after I written [*sic*] her several letters," ECF No. 1-1 at 11.[3] Significantly, Plaintiff does not challenge the veracity (or the reasonableness) of the notion that Defendant felt threatened and disrespected by his repeated letters. In other words, Plaintiff is aware that he was moved to another facility because his letters caused a prison employee to

---

[3] The latter statement comes from a letter that Plaintiff wrote to Congressman Elijah Cummings that Plaintiff included as an exhibit to this action. The substance of the letter to Congressman Cummings largely complains about Defendant's alleged non-compliance with the dress code. *See* ECF No. 1-1 at 7, 9.

genuinely feel threatened by him.

Despite the reason for the move, Plaintiff—again, by his own admission—enlisted his brother to continue to contact Defendant, including by focusing on her compliance with the dress code. ECF No. 1 at 6 ("This case stem [sic] from [Defendant's] inappropriate dress code . . . My brother address the issue on my behalf."); ECF No. 1-1 at 1 (copy of letter from Plaintiff's brother to Defendant stating that he was providing Defendant with "a courtesy copy of dress code in respects to several complaints in which you have several inmates transferred . . . including my brother"). He wrote a letter to Congressman Cummings, also about Defendant and the dress code. ECF No. 1-1 at 7, 9, 11. Now, Plaintiff has filed the instant civil rights Complaint, which he states "stem[s] from [Defendant's] inappropriate dress code."

In sum, Plaintiff's Complaint and attachments demonstrate that this action was filed to harass Defendant, presumably because she rebuffed his "love letters" (or because she objected to his rape and death threats), rather than being filed to vindicate constitutional violations.

## CONCLUSION

Accordingly, Plaintiff's Complaint will be dismissed pursuant to 28 U.S.C. § 1915A on the grounds that it fails to state a claim and is malicious and frivolous. Plaintiff's Motion to Proceed In Forma Pauperis shall be granted and his Motion to Appoint Counsel shall be denied. Because the action fails to state a claim and is frivolous and malicious, this dismissal shall be designated as a strike under the Prison Litigation Reform Act. A separate order follows.

Dated this 6th day of August, 2018.

FOR THE COURT:

_____/s/_____
James K. Bredar
Chief Judge